[Civ. No. 18594.   Second Dist., Div. Three.   Jan. 21, 1952.]

MALCOLM F. MEGUIAR et al., Respondents, v. UNIVER-SAL DIE CASTING COMPANY (a Limited Copartnership) et al., Appellants.

Albert H. Allen and Michael J. Fasman for Appellants.

Walter S. McEachern and B. J. Roose for Respondents.

VALLÉE, J.—Appeal by defendants from a judgment for plaintiffs in an action to recover money paid pursuant to a contract.

■ On March 7, 1946, plaintiffs and defendants entered into a contract which read:

"Carl Lortz

"We agree to build a 12 cavity die to fabricate garden hose nozzles per sample for the sum of $1925.00. We hereby acknowledge receipt of $642.00 down payment. You agree to pay an additional $642.00 on April 2, 1946 and the balance when die is completed and sample castings are approved. We will then supply a minimum of 10,000 sets to you at 10c per set, as cast.

Very truly yours,

UNIVERSAL DIE CASTING CO.

M. E. La Hue, (s)

M. E. LA HUE, SALES MGR.

APPROVED (s) Carl H. Lortz"

Upon the execution of the contract plaintiffs delivered to defendants, as the sample, a machined brass nozzle, made the $642 down payment, and on April 2, 1946, paid defendants $642. Defendants completed a 12-cavity die, and made and delivered 81 sample castings to plaintiffs. The sample castings were in two parts, the body and the cone. Each was beveled. In order to obtain a watertight fit when the cone was placed firmly in the body, both surfaces would have to be smooth and regular. Precision was required. The two parts constituted a set. Plaintiffs assembled the parts and when put together the sample castings leaked and for that reason they were not approved by plaintiffs.

Plaintiffs sued to recover the two payments of $642 with interest. Defendants cross-complained for the balance of the contract price, loss of profits, and sales tax.

The court construed the contract as requiring defendants to make a die and from it manufacture *nozzles* which did not leak water when in use. It found that defendants did not at any time deliver or offer to deliver any nozzle which did not leak, that the 81 sample castings leaked water when in use, and rendered judgment for plaintiffs for the two $642 payments with interest. Defendants appeal.

Defendants contend the court erred in construing the contract, erred in its rulings on evidence, and that plaintiffs do not have legal capacity to sue because they did not publish a certificate that they were doing business under a fictitious name or file an affidavit showing such publication with the county clerk.

In construing the contract, the court said: "I think that contract by its terms is a contract on the part of the defendant to supply a die of the type and character of the sample." A die could not possibly be of the same type and character as the machined sample. A die is a mold in which a raw casting is made. We think it manifest that the court misconstrued the contract. Defendants did not agree to make a die that would cast nozzles in the finished form of the sample or to manufacture finished nozzles that did not leak water when in use. They did not agree to manufacture machined nozzles conforming to the sample nozzle submitted. The sample nozzle had been machined on a lathe. Defendants agreed to build a die from which sample castings were first to be made; and then, if they were approved, to supply a minimum of 10,000 sets *"as cast."* The evidence is without conflict that *"as cast"* means a raw casting as it is ejected from the die of the casting machine ready for machining, or other method of finishing if required. A casting is that which is cast in a mold. It is not necessarily a finished product; if precision is desired, it usually requires tooling or machining. To machine is defined as "to plane, shape, turn, mill, or otherwise reduce, as a casting, to specified shape and dimensions by a machine or machines having a cutting tool or tools." (Webster's Inter. Dict., 2d ed.) Plaintiffs were machinists. Defendants were in the business of making dies and castings. They did not agree to do more. They made a die which turned out castings corresponding to the sample except for the finished surfaces of the latter. There was no evidence that if machined the nozzles would have leaked when in use. There was no evidence that defendants did not fulfill their contract.

After the contract was entered into, defendants prepared plans and specifications of the nozzle to be cast. On March 29, 1946, plaintiffs, in writing, approved the plans and specifications. They showed that the castings were to be made of a material called "Zamak," while the sample nozzle was made of brass, showed tolerances in the two parts up to 5/1000th of an inch, plus or minus, or a possible 1/100th of an inch, and described the work to be done as "die casting." The sample was then returned to plaintiffs. After the plans and specifications had been approved by plaintiffs, defendants made the sample castings in conformity therewith and delivered them to plaintiffs. Defendants, after

laying a sufficient foundation, offered the plans and specifications in evidence. Plaintiffs' objection thereto was sustained. The court erred. The complaint alleged and the answer admitted the die was "to be made according to certain plans and specifications." There were no plans or specifications other than those offered in evidence. ■ A written contract may be modified by a later written contract, and the covenants and agreements of one party thereto furnish a sufficient consideration to support the promises and agreements of the other party thereto. (*Neher* v. *Kauffman*, 197 Cal. 674, 683 [242 P. 713].) ■ Further, an executed oral agreement may constitute a modification of a written contract. (*Julian* v. *Gold*, 214 Cal. 74, 76 [3 P.2d 1009].) ■ Under the pleadings the plans and specifications were a part of the contract. Unless they were in evidence the court could not determine whether defendant had fulfilled the contract.

■ The point that plaintiffs have no legal capacity to sue was not properly raised by demurrer nor was it alleged in the answer; it cannot, therefore, be raised on appeal.

Reversed.

Shinn, P. J., concurred.

WOOD (Parker), J.—I concur in the judgment and the part of the opinion wherein it is held that the court erred in not receiving the plans and specifications in evidence. Although plaintiffs alleged that the die was to be made according to certain plans and specifications, they objected to the plans and specifications when defendants offered them in evidence. If the plans and specifications constituted a modification of the agreement of March 7th, then of course the whole contract was not before the court.

With respect to the agreement of March 7th (if there has been no modification of it), I agree with the interpretation thereof made by the trial judge to the effect that defendants agreed to make a die by means of which nozzles of the same kind and character as said sample nozzle could be made. As stated by the trial judge, the object which plaintiffs had in mind was to procure a die which would make a nozzle that would be equally as effective as the sample nozzle. Defendants said in their agreement: "We agree to build a 12 cavity die to fabricate garden hose nozzles per sample for the sum of $1925.00." It seems that one

of defendants' asserted defenses (to plaintiffs' claim for return of money paid) is that it is impossible to make a die from which a nozzle can be made that will be as effective as the sample nozzle. The defendants were in the business of die casting. Presumably they knew the moldability of different metals and particularly the degree of precision fitting that could be obtained by using the product known as "Zamak" in casting the nozzle. It is not to be assumed that defendants entered into the contract, and accepted plaintiffs' advance payments, in the belief that it was impossible to make the kind of nozzle that plaintiffs expected to receive. It appears, however, that their asserted defense is in effect that *plaintiffs* should have known that it was impossible to cast a nozzle as "per sample" by the use of "Zamak" or any other metal. In view of the lack of evidence as to the moldability of "Zamak" or other metals, I think the question as to the impossibility of casting a nozzle as "per sample" should not be considered in interpreting the contract of March 7th.